MADDOX, Justice.
This appeal involves a dispute over who owns the mineral rights on a 120-acre tract of land in Tuscaloosa County, and the primary issue presented is whether the trustee bank should be estopped to disparage the title of its grantors.
Many of the basic facts were stipulated, but those that were controverted were found adverse to the appellants. The plaintiffs filed an in rem proceeding in the Tuscaloosa County Circuit Court, pursuant to the provisions of Ala.Code 1975, § 6-6-560, to quiet title to the minerals on a 120-acre tract located in Tuscaloosa County.[1] The trial court found that superior record title was vested in the defendant, Amsouth Bank, and that the plaintiffs had failed to establish a statutory presumption of title pursuant to Ala.Code 1975, § 6-6-566(c). We affirm.
The chain of title, for the purposes of this appeal, begins with Marvin Copeland, Sr., who acquired the subject property by warranty deed on January 5, 1948, from E.M. Williams. Some nine months later, on September 20, 1948, Olmstead and Bessie Copeland executed a warranty deed purporting to transfer the subject property to H.W. and David Hutchins. It is undisputed that Olmstead and Bessie Copeland did not have record title to the land at the time of this deed.
On March 17, 1950, H.W. Hutchins and David Hutchins and their spouses purported to convey all of their interest in the land, with the exception of the mineral interest, to Henry David Killiam. On No *608 vember 5, 1953, Henry David Killiam and his wife purported to convey the surface rights to R. Vance Miles, Jr. On the same date, November 5, 1953, Marvin Copeland, Sr., and his wife, Mozelle L. Copeland, and Olmstead and Bessie Copeland executed a quitclaim deed to R. Vance Miles, Jr.
Amsouth Bank, as trustee under the will of R. Vance Miles, claims title to the mineral interest, based on the execution of the quitclaim deed by Marvin Copeland, Sr., and Olmstead Copeland and their spouses to R. Vance Miles on November 5,1953, the same day on which Miles received the conveyance of surface rights from Killiam.
Miles paid a total of $2,200.00 to Killiam for the surface rights conveyed, and $5.00 was the consideration recited for the quitclaim deed he received the same day.
Miles assessed the property and paid ad valorem taxes on the fee from 1953 until 1972, at which time a clerk in the tax assessor’s office changed the assessment to “SR only” (surface rights only). The “SR only” assessment by Miles continued until 1978. In 1978 the Bank began assessing the property as executor of the Miles estate, and it has continued to assess the surface rights since that time.
Hutchins did not assess any interest in the minerals until 1979, but has paid taxes on the minerals since 1974. Since 1979, the Bank has assessed the surface interest and Hutchins has assessed the mineral rights.
The trial court heard the evidence and considered the stipulations of the parties, and entered an order that reads, in pertinent part, as follows:
“Upon due consideration, the Court finds as follows:
“1. Record Title:
“Superior record title to the subject property is vested in the defendant.
“Plaintiff[s’] chain of title originates by deed dated September 20, 1948, from Olmstead Copeland and spouse (Exhibit 3). The evidence is undisputed, however, that Olmstead Copeland at no time held record title to the subject property. At the time of the ‘conveyance’ by Olmstead Copeland, record title was held by Marvin Copeland through that certain deed, dated January 5, 1948, from E.M. Williams (Exhibit 2). To establish their chain, plaintiffs argue that
“1. ‘Marvin Copeland’, the grantee in Exhibit 2 was Marvin L. Copeland, the brother of Olmstead Copeland;
“2. Marvin L. Copeland and Olmstead Copeland were partners in real estate matters and, as such, Olmstead could convey equitable title to Marvin’s interest in the subject property.
“The Court is unable to accept such assumptions or inferences.
“Defendant’s record title derives from a quitclaim deed from Marvin Copeland, Olmstead Copeland, and their spouses (Exhibit 6). Based upon the listed spouses, it is undisputed that this Marvin Copeland was Marvin Copeland, Sr., the father of Olmstead and Marvin L. Copeland. Plaintiff attempts to disregard this conveyance due to its character as a quitclaim deed, due the nominal consideration paid for the conveyance and further argues that the conveyance was merely a correction deed to correct an error in the legal description in the Olmstead Copeland deed (Exhibit 3). The first two (2) arguments are not persuasive and the latter argument contradicts plaintiffs’ argument that Marvin L. Copeland was the grantee in Exhibit 2.
“Assuming that Marvin L. Copeland was the ‘grantee’ Marvin Copeland and that Olmstead Copeland conveyed to plaintiffs' predecessors as Marvin L. Copeland’s partner, it is incongruous that in trying to ‘correct’ his error that Olm-stead would join his father, Marvin Copeland, Sr. in the correction deed. Plaintiffs’ evidence clearly substantiates that Olmstead was ‘active in real estate and astute’ in such matters. The joining of Olmstead Copeland with his father to ‘correct’ any errors Olmstead had made in dealing with the property creates the inference that the grantee ‘Marvin Copeland’ in Exhibit 2 was Marvin Copeland, Sr., and not Marvin L. Copeland.
"It is the further finding that the record is inadequate to establish any partnership or other relationship between *609 Olmstead Copeland and either the father or son Marvin Copeland to warrant a finding that Exhibit 8 was sufficient to convey title, legal or equitable. The Hutchins[es] acquired only color of title by the Olmstead Copeland conveyance. This action by Olmstead Copeland is a confusing element in this case, not readily explained. It is the action of the record title holder, Marvin Copeland, however, which is determinative on the issue of superior record title. And defendant’s title derives directly from such Marvin Copeland.

“2. Statutory Presumptions

“Having found defendant to hold superior record title, plaintiff to prevail must attempt to establish statutory presumptions of title, particularly pursuant to Code of Alabama [1975,] § 6-6-566(c), asserting:
“a. Plaintiff has color of title
“b. Plaintiff has paid taxes for ten years
“c. Defendant has paid no taxes
“d. Defendant has held no possession
“Plaintiff has clearly established (a) and (b) above. The Court further finds that defendant has not paid taxes on the mineral interest during the statutory period.
“In 1978, by an assessment signed by its predecessor’s trust officer, defendant solely assessed surface rights (‘SR’) to the subject property. Subsequent assessments make no specific reference to surface rights or fee, and testimony established that no distinctions are made in such assessments. However, all of defendant’s assessments for the period in question do specifically list sources of title referencing deeds which convey only surface rights. No reference is made to the quitclaim deed which conveyed the fee to defendant’s predecessor. Defendant assessed only the surface interest and, therefore, could only have paid taxes upon that interest.
“Plaintiffs, however, have failed to demonstrate a lack of possession by defendant necessary to create the statutory presumption. As determined by this court, defendant’s record title is for the fee and is superior to plaintiffs’ title. It is undisputed that neither party has actually possessed the mineral interests. It Las been stipulated that [defendant has] maintained exclusive and continuous possession of, at least, the surface. (Stipulation 2.) There being no actual possession nor an effective severance of the minerals, defendant’s possession of the surface extends to possession of the underlying minerals.
“Conclusion: Superior record title is found to lie in defendant. Plaintiffs have failed to establish statutory presumptions perfecting title to them, and title is due to be quieted in defendant as owner in fee simple of the subject mineral property and interests, free of all liens and encumbrances, except those created by defendant and its predecessors. Judgment is accordingly entered in favor of defendant and against plaintiffs. Court costs are taxed to plaintiff.
“Ordered this the 7th day of August, 1991.
“s/Robert V. Woolridge, III
“Circuit Judge”
In view of the findings of fact made by the trial court, which we find are supported by the evidence in the record, we hold that the appellants’ argument that the bank should be estopped to disparage its title has no application here. We agree with the legal conclusions made by the trial court based on its findings of fact. We, therefore, affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.

. The property is described as follows:
"The North Half of the Northwest Quarter (N 1/2 of NW 1/4) and the West Half of the Northwest Quarter of the Northeast Quarter (W 1/2 of NW 1/4 of NE 1/4) of Section Sixteen (16), Township Twenty-two (22) South, Range Eight (8) West, containing One Hundred (100) acres; and the East half of the Northeast Quarter of the Northeast Quarter (E 1/2 of NE 1/4 of NE 1/4) of Section Seventeen (17), Township Twenty-Two (22) South, Range Eight (8) West containing twenty (20) acres, all of said property lying and being in Tuscaloosa County, Alabama and containing in all One Hundred Twenty (120) acres." (Deed Book 270, page 353, Probate Office of Tuscaloosa County, Alabama).